All rise. The Stinger Bill is now in session. I will now call the vote. Please be seated. Thank you. Madam Clerk, please call the next case. 115-3418, CLT Transport v. Workers' Compensation, Jerry Stutz. Counsel, you may proceed. Thank you. Good morning, Justices. Good morning. May it please the Court, Counsel. My name is Jim Kelly. I represent the Plaintiff Appellant, the employer in this case. Justices, I've been hypothetically cross-examining doctors for over 20 years, asking about the hypothetical sneeze that could cause a herniated disc, and I think I must have been wrong. You found such a case? I must have. It happens to be yours. On my lucky day, I got the case. This is the sneeze case, and the Commission's decision found that the sneeze was an intervening accident. We want that to be affirmed. The Commission found that the L4-L5 disc was not related. We want that to be affirmed. Counsel? Yes. You're framing the issues on the first issue as to intervening accident, though. The Commission did not find an intervening accident that broke the causal chain, and that's the critical part in all of this, isn't it? You know, I guess the way I read the way the Commission's decision is set up with the case law and then the conclusion, I don't see how you find that it didn't break the chain. Well, to break the causal chain, it had to be 100 percent cause, and here didn't the Commission find that still the original accident constituted a cause of the claimant's current condition of ill-being using the but-for analysis? Justice, yes, but I think that is the error. I don't think there's any basis in the record for that finding, both factually and medically. Factually, this guy was, our position isn't that he was at MMI or had gotten better. Our position is that there was a permanent change in his condition, and just simply factually, that's the case. He didn't need surgery before. In fact, Ranella, the treating doctor, actually said in his record that he didn't need a fusion. On 125.13, he said the fusion's unnecessary. Past the sneezing event, everything changes about his symptoms. Everything changes about his treatment, and now he needs an MRI, now he needs surgery, and he ends up having the fusion, or ends up having the surgical recommendation. The only way, and this is where the error is, the only way that the L5S1 is related by looking at this is simply because that was the level that he had before. There's no medical explanation for it. The recommendation by Ranella is to do a laminectomy at L4, L5, which is a new finding, and then followed by a fusion at L5S1. And we can't rely on Ranella's any testimony. He didn't give testimony. We can't rely on his records because he didn't even know about the intervening event. But we can read from his records why he was doing, why L5S1 was involved. And he says by, he mentions it in a couple different records. One, he says that by taking out the lamina, the bone, that's going to make the, by doing a laminectomy at L4, L5, which is the new level, it's going to make the spine unstable, so he's going to fuse the L5S1 and the L4, L5. That's the only reason it's related, it would be related. The other statement he makes is he says a decompression will require removal of the facet, which would also cause instability. Again, medically, that has nothing to do with the L5S1 disc. The reason he's touching this is because of L4, L5, the stenosis and the laminectomy that he's doing. Well, didn't both Ranella and Sanpet diagnose disc herniation at L5S1 prior to the sneezing episode? No. That's incorrect? That's incorrect. The L5S1, the L5S1, this original surgery, yes, the L5S1 was in the original surgery. But after the sneezing event, that was what was corrected supposedly in the surgery was the L5S1 herniation. Okay, but I said prior to the sneezing event. Then you're correct, yes. Okay. Yes. But the disc herniation, if there's reference to a disc herniation after the sneezing event, it's new. So it could not be related. But the bottom line is it's the L4, L5 surgery that's being performed that is causing the necessity for the fusion. So I don't know how the commission, there's no basis for that decision. There's no medical opinion for that decision. The only way you could, there's reference to scar tissue, but there's no testimony from any physician that it's the scar tissue that's, you know, it's somehow, was it aggravated? Does it just become symptomatic? I mean, there's no medical evidence to support how it could be related. The only medical opinion, in fact, the commission notes that Ronella does not have all the facts and can't rely on Ronella, and they relied on Walsh. And Walsh said that the L4, L5 was a new finding, and the petitioner's need for surgery was not connected back to the work accident. So our position is that there is no medical testimony in this record to support how they got that L5, S1 is related. So I, the commission, their decision, before they make their finding, they go through this well-established chain of events, and they go through all the cases about an intervening cause. I don't know how you can read that language and then come up with the new findings after the sneezing incident and cite everything they did and not find that this was an intervening accident. And specifically, the new findings being what? The L4, L5 disc, and they, it's a diagnosis, and they specifically say this guy had a preexisting, before the work accident even, preexisting surgery, and Ronella says in his records that that was decompressed at the time of his work-related surgery. So the commission found, and it's supported by the medical evidence, that the L4, L5 finding was a new finding. And that's, Ronella's records support that. The fact that it was decompressed in the prior surgery supports that. Dr. Walsh says that that's a new finding. So it's the operation on that L4, L5 that necessitates even touching the L5, S1 disc. And that's why, I don't know how you can reach the conclusion that L5, S1 somehow is related back to the original work accident. There is no way to do that, factually. I mean, this guy was improving. His quotes are on going back to work, his pain complaints have subsided. So the only reason that L5, S1 is being touched because Ronella said Look at this. Are you saying did Ronella ever release the claimant to return to work? He did not. He did not. And I want to make clear that our position is not that he had been released yet or that he was at MMI. Right. But our position is that he had a permanent change in his condition. And that's supported by the guy's testimony. As opposed to his condition merely worsening, which is what the commission found. Correct. Absolutely correct. And on page 7 of my brief, he says I was getting better, I was relieved, I was finally going to be all right, I'm going back to work, I was happy. He has a sneezing incident and it all changes. All the symptoms change and now he has this new finding L4, L5. And we have a surgery, we have a surgical report to see that that was not there before. We also have a surgical report to show that L5, S1 was decompressed. Let me ask you a point of clarification. You say that it all changed after the sneezing episode. Is this true? In the month prior to the September 2013 sneezing episode, claim and complain of numbness down his lower extremity, feeling like his back wanted to lock up and he had difficulty sleeping. This was before the sneezing episode, correct? That's correct. Does it sound like he's in good shape and he's going back to work? I don't, without looking at every physical therapy record. That's the record. Yeah, and I don't disagree with you. I think that that's my position, why I'm saying he wasn't at MMI and he wasn't 100% cured. But you were sort of portraying that he was pretty much in good shape. There was really nothing wrong with him before the sneezing episode, but that's not really true. I was not portraying there's nothing being wrong with him. I want to make that very clear. My report outlines that he's 3 out of 10. He's getting better. He's having no problems. His symptoms in his legs are subsiding. He's telling the doctors, he's telling people he's better. Then he reports, he self-reports that when he goes, has a sneezing incident, he comes back to the therapist and he specifically reports, I have a change in my condition. My symptoms are different now. And there's a reason, and that is he has a new disc. He has new symptoms. And that's where, that's the biggest issue, the biggest problem with this case is, and this is why the respondents shouldn't lose this case, this is such a complex case. This guy had a pre-existing condition that was operated on L4-L5. He had the prior surgery. He had all of this going on. And there is no medical testimony connecting this back to the original work accident. What did Dr. Walsh say when he interpreted the August 2012 MRI and the December 13th MRI? He said it just kind of sundry fashion that he had the L4-L5 disc. He had spinal stenosis and some scar tissue. And there's reference to it abutting nerves at one level. L5-S1. Correct, correct. He did say that. And he interpreted the December 13th MRI after the sneezing event as having similar findings. Showed a broad base, paracentral protrusion and disc, osteophyte complex at L5-S1. That's right. And that's why I think that Dr. Walsh has to be the one that is relied on in this case because he saw him before the sneezing incident, causally related to everything. He looked at all the records, including the sneezing records and all the films and everything, after the sneezing incident. And he says L4-L5 is a new finding and L5 and the treatment that is needed, he doesn't say he doesn't need it. He says it's not related to the work accident. That opinion is standing alone. And so I think, Justice, it's good to point out how Dr. Walsh analyzed this and he found that it wasn't causally related. So to just speculate, I mean, it basically would be us or the Commission speculating as to how L5-S1 is symptomatic. And there isn't any testimony, there isn't any evidence of scar tissue being the symptom generator. We've all seen cases where there's myriad of discs and they're not symptomatic. There had to be somebody, there has to be some evidence to say that L5-S1 is symptomatic. It's surgery we're talking about. We're not talking about was it released to return to work, was he asymptomatic. We're talking about he didn't need a surgery before and now he needs a surgery. And the Commission found that L4-L5 surgery is not related. So we have to analyze why is L5-S1 related. And if you look at the medical, and here's why you needed a causation opinion from the petitioner. If you look at the medical, when you do a laminectomy, you cut the lamina out and it makes the L4-L5. It makes the spine unstable so he has to fuse it, and he says that in his records. I have to fuse it to L5-S1. He's already done a laminectomy to L5-S1. That was his original surgery. So he's fusing it due to the instability caused by the L4-L5 disk. That's why L5-S1 is touching it, why he's operating on it. So there's no medical evidence. There's no factual evidence to support that it's related to the sneezing incident or to the original work incident. And so our position is that there's no basis in the record for this. So you're saying it's a new independent condition caused by the sneezing. It is. And the new independent condition is? The new independent condition is the L4-L5 disk, which is necessitating the surgery, the laminectomy at L4-L5, which is going to lead to instability. If he takes the lamina out, it will lead to instability because he's already done a laminectomy. He has to fuse those two levels together. But there's no indication from anybody that L5-S1 is symptomatic. I mean, even if it was scar tissue, everybody who has a surgery at that level is going to have some scar tissue. Was it aggravated? There's clearly symptoms now he didn't have before. So our position is the L4-L5 is the new finding. L5-S1 is only being touched because of the L4-L5 surgery. To the extent that there is findings of the L5-S1, they needed to have some testimony to connect it back to the work accident. Well, what did Ranella say? Didn't he offer an opinion that said that the claimant's need for surgery to resolve the L5-S1 condition, the contributing factor was the failed laminectomy in April of 2013, and that's a surgery that you don't dispute was, in fact, causally related? No, but that, number one, he did not testify. And number two, the commission points out, and it's an integral part of this whole analysis. He did not opine what I said he opined? I will not find that in the record? Justice Hoffman, he did, but the key thing is he's missing the aggravation. He doesn't know about the aggravation. That's the key part about why Ranella is you cannot form the basis to operate and do a surgery on a doctor who doesn't know about the intervening cause. What about Dr. Walsh? He did. He did. Did he mention a sneeze in his record? It's interesting, Justice. He does not specifically mention the sneeze in his records, in his report, but he reviewed all the records, and he stated that he reviewed the records and the films, and his position, standing alone, is the petitioner's an MMIS to the work accident. We have a new finding at L405. The surgery being recommended is not related. That opinion is standing alone. And the commission pointed out that Ranella did not even know about the aggravation, and I don't know how we can rely on a doctor who doesn't know. He thinks his surgery failed, and it's interesting that the surgery he's doing is at the L405. Wouldn't you be curious to know how he could explain how L405 got involved in his failed prior surgery? And if you look at his records, it's interesting. He says L405, you can see he's scratching his head. L405 was clean when I did my surgery. This guy had prior surgery. It was clean when I did my surgery, and now we have findings at L405, and he's scratching his head. He's missing the key issue in the whole case, and that is the knowledge of an aggravation. So his respondents' position is that there's not a basis in the record. You can't rely on Ranella, and there's not a, there's not, this is the kind of case with myriad medical issues that require expert testimony, and the only expert testimony is Dr. Walsh, and he's standing alone. And it's, we can't say, boy, he's a hired, he's a hired respondent's expert. It's, he connected this case up to begin with and agreed with the treating doctor, and the commissioner relied on him for purposes, the commissioner relied on him alone for purposes of their decision. Chain of events which supports this is not related back to the work accident, and Dr. Walsh's opinion. And Dr. Walsh's opinion is the surgery is not related to the work accident. There's paucity of any other evidence explaining how this can be connected back, and the medical itself supports just even from a lay reading of it, and reading from the 124.14 and 12.11.13 record of Ranella, that this is not related to the work accident. Counsel, before you conclude, I just, I want to make sure what your argument is here today as compared to the argument made in your written brief. In your brief, it seemed that you were arguing that there was a new herniation at L5S1 found following the sneezing episode that did not exist prior to the sneezing episode. It's referenced multiple times throughout your brief. Here, I hear you saying something different. Well, I think that what's confusing about it is Ranella's records, and that's why we don't have his testimony. He says that. My confusion stems from the argument being made here today versus the argument made in the brief. So can you clarify that? Today, are you arguing that there was a new herniation at L5S1 following the sneezing episode? I think Ranella's records are ambiguous. I think he says as his post-sneeze diagnosis that there's an L5S1 disc. Our position on that is if there's a disc, it's new, and it cannot be related back to the work accident. And with regard to L405, it's clearly new. And if you read his, and I'm not trying to not answer that question directly, that's why we need Ranella's testimony. It's unclear from his records whether he is saying there's a new, if you look at, if he says residual disc herniation, he calls in some records, he calls, you know, I don't know if he ever used the word new herniation. I think he thinks his surgery failed. I know, but Dr. Ranella isn't framing the issues on appeal. You as the appellant frame the issues on appeal. I read the brief to read your brief to read that the reason why the commission's decision was flawed was because the L5S1 disc herniation occurred after the sneezing episode, and there's no basis in the record to conclude that it was present prior to the sneezing episode. Is that your position here today? Yes. Okay. And to incite, like, for instance, the 12-11-13 record where Ranella says the procedure, the laminectomy at L405, followed by the fusion at L5S1, this procedure is necessary because the disc herniation will require removal of the facet, which will cause instability. Keys already operated at the L5S1. Walsh comments on the surgical findings and not encountering a disc. It's unclear what Ranella means in his records, and that's the confusing part of his, what he, I don't think he knows. I think he's scratching his head because he does not know this guy had an intervening accident, and he's saying, boy, my surgery failed. So our position is if he's categorizing this according to his records as a new disc, couldn't have been caused by the work accident because he already went in and operated there. And if you read Walsh's test, read Walsh's reports, he didn't encounter a disc. And if there's a disc present now, it's new. If we're talking about L405, it's clearly new based on Ranella and based on Walsh. So, and he goes back and forth. That's why I read his two potential reasons why he's doing the surgery. On one, he says it's removing of the lamina, which would be at L405. And on the other one, he says removing the facet in reference to talking about the L5S1. And so it's unclear. I think he, that, and those two references, 12, 11, 13, and the other one is 12, 24, 14. And in both instances, you know, when he's talking about decompression that would require removal of the facet, he's already done a surgery where it was decompressed. The only argument you could potentially make would be the scar tissue. You'll have time in a little while. Okay. Thank you. Counseling may respond. Good morning, Your Honors. Thank you. May it please the Court, Mr. Kelly. My name is Mark Stuckel. I represent the petitioner, Jerry Stiles, in this matter. I think I would like to address what Mr. Justice Harris and Mr. Justice Hoffman had most recently spoken about. The MRI. I want to direct the Court's attention to the two MRIs. In August of 2013, 2012, if I may be pardoned, August 17th, 2017, an MRI was undertaken that showed at the L5S1 level, quote, there was a broad-based right paracentral protrusion that was read by a radiologist, Dr. Leon Wise. Subsequently, there was surgery, there was a sneeze, and there was another MRI undertaken on December 4th, 2013, which states identical language. There was a redemonstration of the broad-based right paracentral protrusion, again, read by the same radiologist, Dr. Leon Wise. I think that the takeaway from that is the same radiologist saw the L5S1 condition prior to the surgery, prior to the sneeze, and subsequent to the surgery, and subsequent to the sneeze. If the Court looks at Dr. Ronnella's medical record dated January 24th, 2014, Dr. Ronnella in his impression section notes a residual L5S1 disc herniation. Interestingly, that's the identical language that Dr. Ronnella uses pre-surgical and post-surgical. Dr. Ronnella uses that language. It is January 25th, 2013, and is March 15th, 2013. So the sneeze did not result in a new and independent condition, you're saying? No, sir. No, sir. We do not believe it did. The respondent we have, the Court believed that this petitioner was ready to go back to work full duty just prior to the sneeze. Of interest in Dr. Ronnella's records on August 1st, 2013, some six weeks before the sneeze, Mr. Stiles was complaining of right leg numbness, low back pain, was taking medication, had decreased motor strength, and he had an additional six weeks of physical therapy scheduled. He was in no way, shape, or form ready to go back to any kind of work, let alone driving as a hazmat driver. So that could be interpreted a little bit subjectively, but basically down the gauntlet, and I think you've tried to rebut it, is that this condition was totally new following the sneeze. And you're saying there is medical evidence contrary to what he said to rebut that argument, right? Yes, sir. Yes, sir. And that evidence again is? The evidence is the medical condition was not quiescent at the time of his sneeze. He was under active medical care. He was taking medication. He was involved in physical therapy. Of interest, the day of the sneeze when he was talking to the therapist explaining how he was doing, he said he had pain, and he said, and for me this is very germane, he said, when I was watching the football game over the weekend, quote, sitting kills me. That certainly isn't the statement that one ready to go back to work or in a quiescent condition is going to make. That was the morning of the sneeze. He finished therapy, went home, and he had a single sneeze, which is one of the most basic human actions or reactions one can have, a single sneeze. Well, theoretically, it could cause a new problem depending upon the force of the sneeze, but you're saying in this case it in fact didn't. That's correct. Subsequent to the sneeze, the petitioner went and saw Dr. Ranella, and he was still complaining of medical conditions. I guess the point or the takeaway, Your Honors, is that prior to the sneeze, the MRI showed there was a herniation. Subsequent to the sneeze and the surgical repair, there was the same L5S1. It was not new. No, no, continually. It was the same condition. The MRI is read by the same radiologist pre-surgery and post-surgery. What was the name of the radiologist? Leon Wise, L-E-O-N-W-I-S-E. He's on the record at page 463. This is August 17, 2012, MRI interpretation. And he's on the record at page 454, reviewing his December 4, 2013. Saying that it hadn't changed. That is correct. I mean, the language is basically verbatim. The petitioner continued to treat with Dr. Ranella, who indicated that he failed. Clearly, conservative management regarding his treatment, and that he was not cured. He was still under active care. Dr. Walsh. Dr. Walsh saw my client as an IV evaluator in September of 2013, and Walsh says, more likely than not, he's at MMI from his April 13 surgery. Well, that's belied by the fact that, and found not credible by the fact that he was still treating with Dr. Ranella. He still had active symptoms of numbness in the right leg. He was still complaining of lumbar pain. He was still in physical therapy. Dr. Walsh also talked about subjective complaints seeming disproportionate with pain behaviors. Dr. Ranella, the treater who had seen this gentleman numerous times, never once mentioned any symptom magnification or any symptom abnormalities. Dr. Walsh, as I understand, said that this gentleman was not taking pain medication as of the time of the September 17th exam. That's wrong. He was still under medication from Dr. Ranella. That's borne out in the testimony. Dr. Walsh also said he could return to work full-time driving a truck. He was taking narcotics. He's a hazmat truck driver. Federal regulations will not let this gentleman go back to work driving a truck. The importance of this, prior to the sneeze, the petitioner was still very symptomatic. Was he making progress? Yes. Was he cured? No. He was making progress, but he was still symptomatic. The respondent was hopeful. Would he have the court believe that he was ready to return to work, fit as a fiddle? He wasn't. Dr. Walsh, interestingly, did a record review on January 24th, 2016, where for the first time ever he mentions the petitioner's weight. He mentions the petitioner's weight. He's a big gentleman, this fellow. Dr. Walsh never mentioned weight prior to this point, to this record review, when Dr. Walsh authorized the surgery. Dr. Sampant and Dr. Rinella never mentioned the petitioner's weight as any kind of factor, either in predisposing him toward the accident or as a contraindication to surgery. Regarding smoking, Dr. Walsh never mentioned the gentleman's smoking habit, if you will, when he authorized the surgery before. It wasn't an issue until he became a record reviewer on the second time. Again, the MRI mentioned it was seen both pre-surgical and post-surgical, having the L5S1 conditions. Dr. Walsh never opined that the single sneezing incident broke any chain of causal connection. Dr. Walsh certainly had every opportunity, as an IME-hired doctor, to do that. He never went there. So are you saying, in essence, there was more than sufficient evidence to support the commission's decision? Yes, sir. On a manifest weight of the evidence argument, yes, there was. The case law, of course, and we're running out of time, I know. We're getting close. If you'd like to wrap it up.  Okay. Thank you, counsel. Thank you. Counsel, you may reply. On the issue of the L5S1 herniation, Dr. Walsh points out that upon reviewing the surgical report, that there was no L5S1 disc encountered during surgery. So when we're talking about this MRI that's performed after the sneeze, I'm not sure I'm following this logic. Well, he said in his operative report, both the pre-op and post-op diagnosis was L5S1 disc herniation. Correct. And if that's the case, then how have we determined, why did this disc then that he operated on? Well, no, I'm just simply addressing what you were prefacing your remarks with, which was Dr. Ranella did not encounter an L5S1 disc herniation. If I misspoke, I thought my comment was prefaced with Dr. Walsh commented that Dr. Ranella did not encounter a disc during his surgery. If you look at the surgical report, he uses a pre- and post-op, but if you read through his report, and Dr. Walsh outlines it in giving his opinions, that he doesn't say he encountered a herniated disc there. Well, so is Dr. Walsh saying that Dr. Ranella's operative report is in error? No, if you find in that report, contrary to the medical expert that testified, that he outlines a herniated disc in his report, no. But that raises the logical question, if it was present before, and his counsel says it's exactly the same afterwards, that's not the symptom generator. How is that the symptom generator for this current surgery? That's where the intervening accident comes in. Setting that aside for a second, who's Dr. Weiss? Doctor, I'm sorry? Dr. Weiss? There wasn't a Dr. Weiss in this case. There was no testimony given by any of the doctors. Who says Leon Weiss? Who's that? If there's Dr. Leon Weiss, he's a radiologist at Red. He ran the hospital. He was the... Well, that's what I'm asking counsel. You never heard of Dr. Weiss? He's a radiologist, and I was relying on the expert that testified in this case, or I mean that gave opinions in this case. Let's set that aside. Did Dr. Weiss provide evidence, as counsel has represented, that when he compared the MRI before and after, it was essentially unchanged? It supports the intervening accident. That's what I'm saying. There's only two ways to look at this. One, it remained the same. Therefore, he had a change in his symptoms. That's not the symptom generator. You're not answering my question. Did Weiss testify that the MRI he compared... No, he did not. He did not? He did not. I don't agree. You just find that in the decision. It's nowhere in the decisions. That's on counsel. It's not on page 463? No. In the decision that the same... The Dr. Weiss decision of the arbitrator? Does it have to be? Can we inform based on anything we find in the record? I guess what I'm trying to implore you to do is to... Every surgeon that I've ever opposed would say that they're the one doing the surgery. They're the ones that can go in and see whether something is there or not. Radiologists routinely... Everybody who operates one wants to look at the film themselves. But I'm assuming what you're saying... We're assuming that it's true. Assume that it's the exact same condition. Then that's not the symptom generator. After the sneeze incident, that cannot be the symptom generator. It's exactly the same as it was before the sneezing incident, and he was doing great. He was getting better. So the only thing that has changed then, using that logic, is the new L4-L5 disc that is necessitating the surgery. If we say it's a new disc at L5-LFS1, and we listen to the only expert to testify and that gave opinions in the case, Dr. Walsh, he says that, looking at the surgical report, that he actually didn't encounter a herniated disc. The commission doesn't have to adopt any particular... They can adopt the radiologist's opinion over everybody else, including Walsh. But there is a radiologist's opinion in here that this L5-S1 disc... Well, I'm going to call it with a record, because I'm still confused over what he said about Dr. Walsh. Justice, there's no opinion by a radiologist that the surgery that's being proposed, that the commission awarded, is causally related to the work ethic. He didn't allege that. All he said was the radiologist said the condition was the same. And you've danced around it. I'm not dancing around it. I'm hitting the kettle and saying that supports my case. If the herniated disc is the same pre-sneeze, pre-sneeze, and post-sneeze, it supports my argument that the symptom generator after the sneeze is the L4-L5 disc necessitating the surgery. The original argument was there was no medical evidence whatsoever. There isn't. That supports my case. I don't know how that supports that this... You're saying you're going from reasoning, logical reasoning, that the conditions were the same, but there's a new symptom. Correct. And there's an intervening accident, and there's an intervening disc involved, and he didn't need surgery before. If it's exactly the same on the MRI, and that's why my assumption in the brief that Ranella is talking about a new disc in L5-S1, because Walsh said he didn't encounter it in his original report, how do you tie up L5-S1 to this surgery? Because if you listen to what Ranella says, and if you look at his records, he says why he's doing the surgery. And he gives two different explanations, and both of them rely on the fact that this guy has severe stenosis and a new disc in L4-L5, and he's going to have to take out the lamina or the facet, which is going to cause instability, which makes it... He's going to fuse it to L5-S1. That's why L5-S1 is being indicated in this surgery, not because of a change in a disc, or if it is because of a new disc, it wasn't there before. He apparently corrected it in surgery. So in either scenario, there's no evidence in this record to support that this guy's L5-S1 is related back to the work accident without speculation as to things like what the arm trainer made a mistake, that it was in a weakened condition, or there was scar tissue that must have become symptomatic or aggravated, or it's so intertwined with L4-L5. Those things we can all guess and speculate about, but the onus is on the petitioner to establish that with medical evidence, and there's not medical evidence in the record. The one testimony that the commission relied on was Dr. Walsh. He says the surgery being proposed is not work-related. Does he need surgery? If he doesn't disagree with that, it's not work-related. There's a new finding of L4-L5. So our position is that if we don't have Ronel, we don't have Sam Pat, we don't have a radiologist, we don't have any person that can medically connect the L5-S1 to the work accident in a lawful opinion that's required by the court and on the proper standard other than Dr. Walsh and it's not related, and anything else would be speculation. This is beyond the kin of laypeople, and there's no other evidence in the record. This is a case that should be the commission took it to where it should be and found an aggravation. I think that's clear from the decision if you read it as a whole, and the mistake that they made is trying to somehow lump that L5-S1 into the mix only because it was the same level that was involved before. But there's no evidence to support that, both factually or medically. We would ask that the commission's decision as to L5-S1 be reversed. Thank you. Thank you, counsel. Thank you, counsel, both for your arguments in this matter. It will be a written disposition we'll issue.